| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23 CR 98 |
| | ) | |
| CHARLIE LEWIS III, | ) | Judge Virginia M. Kendall |
| | ) | |
| *Defendant.* | ) | |

## **MEMORANDUM OPINION & ORDER**

For the reasons below and discussed in open court, the Court rules on the Defendant's

Motion *in Limine* [173, 175 at 5–10] and the Government's 404(b) Notice [140] as follows.

I.    **Lewis's Motion *in Limine* to Exclude Expert Testimony of DEA Special Agent**

**Michael Burke (Dkt. 173)**

Lewis moves to exclude expert testimony from DEA Special Agent Michael Burke. (Dkt.

173). The Government intends to call Agent Burke to testify as to the typical street dosage of

fentanyl, cocaine, cocaine base, and psilocybin, and that the quantities seized in this investigation

are consistent with drug trafficking, rather than personal use. (Dkt. 137 at 6). The Government also

intends to have Agent Burke describe common methods for handling and storing controlled

substances, along with the use of items like baggies and digital scales, testify that "cash is the

predominant currency in drug transactions," and testify that "because selling controlled substances

is dangerous, and because seeking help from law enforcement is not an option, individuals

frequently use firearms for protection to facilitate drug trafficking." (*Id.*)

As a general rule, "government agents or similar persons may testify as to the general

practices of criminals to establish the defendants' modus operandi." *United States v. Ochoa*, 116

F.3d 487 (9th Cir. 1997); *see also United States v. Holguin*, 51 F.4th 841, 856 (9th Cir. 2022) ("A

law enforcement expert can reliably testify about the structure and activities of criminal

1

organizations based solely on experience."). Such testimony helps the trier of fact to understand how "combinations of seemingly innocuous events may indicate criminal behavior." *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir.1984). Of course, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

*United States v. Vallejo* is instructive here. 237 F.3d 1008 (9th Cir. 2001), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001). There, the Ninth Circuit found an agent's testimony to be unfairly prejudicial and an abuse of discretion because the "improper use of testimony concerning the structure of drug trafficking organizations . . . is akin to the improper use of drug courier profiles." *Id.* at 1017. There, the "expert testimony connected seemingly innocent conduct to a vast drug empire, and through this connection, it unfairly attributed knowledge—the sole issue in the case—to Vallejo, a single individual, who was not alleged to be associated with a drug trafficking organization in even the most minor way." *Id.*

Generally speaking, law enforcement agents "can testify as to the street value of narcotics." *United States v. Velazquez*, 125 F.4th 1290, 1294 (9th Cir. 2025). That rule governs here. It is perfectly in bounds for Agent Burke to testify as to the mannerisms and processes of the drug trade, such as the use of cash instead of credit cards. *See, e.g.*, *United States v. Patillo*, 2024 WL 4557345, at *2 (D. Nev. Oct. 23, 2024) ("The average juror would not be familiar with drug trafficking organizations, the general amount of methamphetamine involved in personal use and the amount generally involved in distribution, the street value of the drug, or how firearms would be involved."). What the agent cannot do is offer testimony that amounts to argument, such as commentary on the cognitive choices the Defendant made by alleging storing drugs at a third-party location, and the like. In other words, the expert can testify as to common indicators of drug distribution, but he cannot testify that those factors are specifically indicative of this defendant's

2

role in distribution. Whether or not Lewis had the intent to distribute is a question for the jury.

Further, Agent Burke's testimony must be proportional to the facts of this case. The Government should hew to the parameters set out in recent case law regarding testimony that would be beyond the scope of these relatively straightforward charges. In *Velazquez*, for example, the Ninth Circuit looked favorably upon expert testimony that focused on the expert's "experience in investigating narcotics-smuggling operations, on how law enforcement determines the value of street drugs, and on why that value is important to their work," contrasting it with the *Vallejo*-style improper testimony where knowledge of drug cartel operations "would have substantially outweighed the probative value of his testimony." *Velazquez*, 125 F.4th at 1297.

With that, the Court turns to the portion of Agent Burke's proposed testimony on guns. The Defense has identified a trend in at least some out-of-circuit district courts to hold that with "the prevalence of news and media depicting the relationship between drugs and firearms, it is unreasonable to think that jurors, in 2024, need expert testimony to know that drug traffickers often carry and use firearms to protect themselves." *See United States v. Diaz*, 2024 WL 758395, at *10 (D.N.M. Feb. 23, 2024). Nonetheless, Ninth Circuit guidance has not yet swung quite as far as Lewis encourages this Court to go. *See, e.g.*, *United States v. Fletes*, 2024 WL 4603240, at *6 (C.D. Cal. Oct. 28, 2024) (holding that "the lay jury does not have any experience with drug trafficking and therefore is unaware as to whether baggies and firearms are consistent with drug trafficking and how"); *Sullivan v. Loden*, 2024 WL 4466741, at *7 (D. Haw. Oct. 10, 2024) (observing in another context that "the Ninth Circuit was not suggesting that *any* layperson would be expected to know about the connection between guns and drugs").

The expert's testimony on this point, however, cannot assert that drug dealers possess guns because they are violent; instead, the testimony can speak only to the tendency for weapons to

3

come into the picture for protection in the context of large quantities of cash and valuable product. "It is well-established that drug dealers commonly use weapons to protect themselves and their wares." *United States v. Prado-Medina*, 276 F. App'x 687, 689 (9th Cir. 2008). Further, the Ninth Circuit has explicitly held that "expert testimony that drug traffickers generally use firearms to further their drug crimes, standing alone, is not sufficient to establish that a firearm was possessed in furtherance of a particular drug crime." *United States v. Rios*, 449 F.3d 1009, 1014 (9th Cir. 2006). Thus, Agent Burke may offer testimony on this point, but cannot offer an opinion as to whether Lewis possessed the requisite criminal intent to possess firearms, instead offering testimony only as to the common practice of those who do have such intent. *United States v. Anchrum*, 590 F.3d 795, 805 (9th Cir. 2009).

Finally, the Court will briefly address the Government's request to exclude Agent Burke from the Fed. R. Evid. 615 Exclusion Order that the parties agreed to during the Final Pretrial Conference. The Ninth Circuit has held that the core purpose of the Rule is "to prevent witnesses from tailoring their testimony to that of earlier witnesses." *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) (citation omitted). Expert witnesses are often "essential" for the presentation of a party's case, but the party seeking to avoid sequestration of a witness bears the burden of proving an exemption applies. *See Kennis v. Metro. W. Asset Mgmt., LLC*, 2018 WL 9440483, at *3 (C.D. Cal. Nov. 29, 2018); *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002) ("We decline to conclude, however, that an expert witness will *always* meet the criteria of Rule 615(3).").

The Government has not met their burden here. The Government suggests that Agent Burke needs to hear testimony regarding the specific facts supporting their case, but Agent Burke need not do so in order to offer the permitted limited testimony, i.e. what quantity indicates distribution, the role of weapons, and the role of cash. Agent Burke is not permitted to testify that the specific

4

facts he heard during the trial are indicative of drug trafficking, as that is a determination for the jury.

**II.      Lewis's Motion *in Limine* Regarding Government's 404(b) Notice (Dkt. 175 at 5–**
**         10)**

Lewis moves to bar the Government from introducing evidence of his 2015 convictions for drug distribution conspiracy as well as the underlying facts of that conduct, as well as a 2014 prosecution for his involvement in a drug distribution conspiracy and for possessing a firearm to further the conspiracy, from which he was convicted of two counts of drug distribution conspiracy and acquitted of the firearm count. (Dkt. 175 at 4).

Rule 404(b)(1) prohibits the use of propensity evidence. It states: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Conversely, Rule 404(b)(2) allows the admission of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." A four-part test guides whether evidence should be admitted under Rule 404(b): "evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Hankins*, 94 F. App'x 507, 509 (9th Cir. 2004).

Even if evidence clears the Rule 404(b)(1) hurdle and would be offered for a permissible purpose under Rule 404(b)(2), the evidence must also withstand scrutiny under Rule 403. Rule 403 authorizes courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The first factor of the four-part test is key to this dispute. The Ninth Circuit has "consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent and knowledge in drug importation cases." *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1265 (9th Cir. 2024) (cleaned up). The Defense contends that Lewis's knowledge and intent are not at issue because Lewis will admit to distributing drugs before, but this oversimplifies the Government's task: to prove that he possessed the charged controlled substances with the intent to distribute them in the present instance. That includes proving how Lewis is responsible for the controlled substances and the firearm stored at an apartment other than his own. Lewis's prior experiences with drug distribution charges inform his efforts to keep the illegal activity away from his own property. Of course, unlike in *Jimenez-Chaidez*, where the Ninth Circuit observed "no apparent innocent explanation for why Jimenez repeatedly engaged in this pattern," the Government here has not put much daylight between their proposed use and the propensity inference. *Id.* at 1265–66.

On the other hand, given the nature of the charges and the prior conduct, there is a significant risk of prejudice. "Where a prior conviction was for a gun crime or one similar to other charges in a pending case, the risk of unfair prejudice would be especially obvious." *United States v. Hankins*, 94 F. App'x 507, 510 (9th Cir. 2004) (citation omitted and cleaned up). The Government has not offered much insight as to what details about these prior incidents distinguish their inquiry from pure propensity evidence. *See Jimenez-Chaidez*, 96 F.4th at 1265 ("And it is not merely that Jimenez previously engaged in drug smuggling that evidences he knew drugs were in his vehicle, which would be impermissible propensity evidence."). As it stands, Lewis's prior drug

6

convictions and gun charge tend to prove his role in the present charges only by way of a propensity inference: Once a drug dealer, always a drug dealer. Further, the fact that the incidents are now distant in time diminishes the probative value (and weighs on the "not too remote in time" component of the 404(b) analysis).

If the Defense were to stipulate both to knowingly possessing and knowingly being convicted of the prior charges, the Government's motion would be an easy denial. As it stands, though, the prejudicial value still dominates the analysis. The Court at this time declines to admit the Government's proposed 404(b) evidence.

### III. Lewis's Motion *in Limine* Regarding Government's 404(b) Notice (Dkt. 175 at 11–15)

Finally, the Government seeks to admit, and the Defense moves to exclude, "evidence of the items located at Wandering Dr, the tipsters [sic] testimony of conduct occurring between April and September 2023, the Defendant's possession of oxycodone, and status on supervised release at the time of the charged conduct." (Dkt. 140 at 14).

The Defense contends that the jury does not need an "explanation of the complete investigation or why the search warrants in this case were obtained" when they will be informed that the warrants were in fact "obtained, executed at Mr. Lewis's residence, narcotics were found, and Mr. Lewis admitted to distributing narcotics." (Dkt. 175 at 12–13). The Government contends that though "the charged conduct only includes the substances seized during the September 26, 2023, search warrants, the tipster's first-hand observations of Lewis' distribution conduct explain the complete investigation and further establish intent. (Dkt. 140 at 13). The Government argues that evidence located during the July 2023 Wandering Drive search, as well as oxycodone found during the September 2023 E. 19th search, "provides a complete picture of the charged conduct"

despite themselves being uncharged. (*Id.*) The Government also seeks to introduce Lewis's probationary status because "Lewis' failure to accurately report his addresses to his probation officer is important to telling a coherent story about the tips provided and the search warrants executed." (*Id.* at 14).

Federal Rule of Evidence 404(a) excludes evidence of "a person's character or character trait" to prove conduct consistent with that character on a specific occasion. The exceptions often eat the rule, however, through Rule 404(b)(2), which allows the admission of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Committee Note to the 1991 amendment to Rule 404(b) distinguishes between acts that are governed by Rule 404(b) because they are "extrinsic" to the charged offense and those that are not because they are "intrinsic" to it. The Committee Note to the 2011 amendment to Rule 404(b) further emphasize this point, highlighting that "Rule 404(b) applies to crimes, wrongs, and acts 'other' than those at issue in the case."

First, the Government argues the Court need not apply Rule 404(b) at all. The Ninth Circuit has long identified two categories of evidence so "inextricably intertwined" with the charged crime that they need not meet the 404(b) requirements: where it "constitutes a part of the transaction that serves as the basis for the criminal charge" and where it is "obviously necessary . . . for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).

Numerous other Circuits have moved away from the "inextricable intertwinement" doctrine. *See United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) (holding that the doctrine "has since become overused, vague and quite unhelpful. . . . [it] has outlived its usefulness");

*United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000) ("there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b) in the D.C. Circuit"); *United States v. Green*, 617 F.3d 233, 246–247 (3rd Cir. 2010) (narrowing the doctrine because "[l]ike its predecessor *res gestae*, the inextricably intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the danger it poses to the vitality of Rule 404(b)").

Nonetheless, the doctrine appears to be alive and well in the Ninth Circuit. *See United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) (holding that Rule 404(b) was inapplicable because (1) the specific frauds not specified in the indictment were not "other" acts because the crime charged included not only the specific executions of the fraud scheme alleged in the indictment, but also "the overall scheme," and (2) because the uncharged acts were "inextricably intertwined" with the frauds specified in the indictment because the uncharged transactions were "part of the overall scheme" and "part of the same transaction").[1] Further, in the Ninth Circuit, while the actual admission of "other crimes" evidence is reviewed for abuse of discretion, the initial ruling that evidence is intrinsic to a charged offense is an issue that is reviewed *de novo* on appeal *Id.* at 1176 n.1.

Lewis has been charged in Count 1 with Possession of Controlled Substances with Intent to Distribute, under 21 U.S.C. § 841(a)(1), (b)(1)(C), Count 2, Possession of Firearm in Furtherance of Drug Trafficking, under 18 U.S.C. § 924(c)(1)(A)(i), and Count 3, Felon in Possession of a Firearm, under 18 U.S.C. §§ 922(g)(1). The Government has indicated this evidence is necessary to prove Count 1 and Count 2, noting that the Defense has not stipulated to any element of either. (Dkt. 181 at 2). For its part, the Defense describes that "Lewis does not

---

[1] More recent cases cite this principle, *see, e.g.*, *United States v. Miller*, 2023 WL 2064542, at *1 (9th Cir. Feb. 17, 2023), but this Court may not cite them for precedential purposes under CTA9 Rule 36-3.

intend to contest Count 1" due to an interview in which Lewis "admitted to distributing fentanyl to his father and the mother of his child," admitted to ownership of "the cocaine, psilocybin mushrooms, and oxycodone found at Williams's residence," and "recognized that he was distributing these items." (Dkt. 200 at 1–2). Of course, in the same interview, Lewis states that the reason he possesses hundreds of these bills is *for* his father and the mother of his child, suggesting a denial of criminal liability, but he also goes on to say he is the "only person in Anchorage, Alaska, [to] sell crack." (*See* Dkt. 200-1 at 15, 17, 20).

The required elements for possession with intent to distribute are: "(1) the defendant knowingly possessed the controlled substance; and (2) the defendant possessed the controlled substance with the intent to deliver it to another person." *United States v. Mancuso*, 718 F.3d 780, 791 (9th Cir. 2013). To prove a violation of § 924(c)(1)(A)(i), the government must show the following: (1) Lewis participated in a drug trafficking crime; (2) he possessed a firearm; and (3) his possession of the firearm was "in furtherance" of the drug trafficking crime. *United States v. Nobari*, 574 F.3d 1065, 1079–80 (9th Cir. 2009).

The Ninth Circuit has cautioned that the exception to 404(b) "should be applied narrowly to avoid the overly-broad, so-called '*res gestae*' exception," *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991), *as amended* (Dec. 16, 1991). Applying this guidance, the Court permits the tipster to testify in limited purpose. As noted above, the Government already has evidence in which Lewis admits to distribution and ownership during the September 26, 2023, search warrant executions. The tipster need not testify to these concepts as a general matter. What the tipster can offer, however, is testimony permitting the prosecutor "to offer a coherent and comprehensible story" regarding the connection between Lewis and the owner of the E. 19th apartment for the purposes of establishing possession beyond a reasonable doubt. *Vizcarra-Martinez*, 66 F.3d at

1012–13. This testimony must be profoundly limited. For example, if the tipster were to testify that "I've seen Lewis out dealing drugs for months," that statement ventures into 404(b) propensity. Testimony in the vein of "I provided this information to law enforcement because I had concerns," or "this is the information I provided" (without commentary on the validity of that information) does not venture into 404(b) propensity. Further, any testimony from the tipster must avoid delivering the prosecution a hearsay problem. The tipster could conceivably testify to the way the listener reached to the information they provided. The tipster could also testify to any statements allegedly directly made by Lewis as statements against interest. Nonetheless, the Government must ensure this tightrope is walked appropriately.

The Government's efforts to bring in Lewis's supervised release status are less persuasive. Lewis's failure to accurately report his addresses to the probation officer are not "inextricably intertwined" to the charges, as the Government suggests. (Dkt. 140 at 13). Honesty is not an element that the Government must prove to the jury. For this narrow exception to apply, "[c]oincidence in time is insufficient." *Vizcarra-Martinez*, 66 F.3d at 1013. Should Lewis take the stand, the Government can raise the lies to probations as a matter of credibility, but that is not the question here.

Finally, the Government may not introduce, through this exception, the uncharged oxycodone pills and evidence found during the uncharged July 2023 search. If "[t]he mere fact that a defendant is in possession of a small amount of a prohibited narcotic substance at the time he commits a crime is not enough to support the introduction of the evidence of drug usage," then it is certainly not justification to "exempt[] the evidence from the strictures of Rule 404(b)" when the possession took place at a separate time entirely. *Vizcarra-Martinez*, 66 F.3d at 1013.

11

Thus, the Government's other requests are governed by the 404(b) analysis, in which "evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *Hankins*, 94 F. App'x at 509.

The Government's proposed evidentiary introduction of the pills fails this test. Possession of oxycodone does not "tend to prove" possession of the charged substances, namely "N-phenyl-N-[1-(2-phenylethyl )-4-piperidinyl] propenamide (fentanyl), cocaine, cocaine base, and psilocybin." (*See* Indictment). Neither, for that matter, does Lewis's status on supervised release. Both of these proposals are highly prejudicial offerings directly at odds with the spirit of 404(b). In *United States v. Hill*, for example, the Ninth Circuit overturned a jury verdict where a trial court had incorrectly admitted testimony regarding prior drug use in a conspiracy case as direct evidence rather than excluding it under 404(b). 953 F.2d 452, 457 (9th Cir. 1991), *as amended* (Dec. 16, 1991) (noting that while the prior drug use involved an individual "pivotally involved in the conspiracy charged, the prior act was not connected with the development of the conspiracy"). Even in *Vizcarra-Martinez* itself, the Ninth Circuit found his use of methamphetamine not sufficiently relevant to the charged offense nor probative of the requisite knowledge—namely, it did not "tend to prove that he was aware that the chemicals he was delivering would be used to manufacture methamphetamine or that he intended to participate in a conspiracy to do so." 66 F.3d at 1014.

The judiciary's longstanding "reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal system, that the defendant must be tried for what he did, not for who he is." *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir.1993) (quoting

12

*United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir.1985)). The Government must prosecute its case in line with the guidance provided above.

## **CONCLUSION**

For the foregoing reasons, and those explained in open court, the Court so rules on the parties' pending Motions *in Limine*.

_____
Virginia M. Kendall
United States District Judge

Date: May 8, 2026

13